# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## BRANDYCE LUSBY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-09-198     Roger A. Page, Judge**

---

**No. W2009-02025-CCA-R3-PC  - Filed July 27, 2010**

---

The Petitioner, Brandyce Lusby, appeals as of right from the Madison County Circuit Court's denial of her petition for post-conviction relief challenging her guilty plea convictions for second degree murder, attempted especially aggravated robbery, and tampering with evidence for which she received an effective sentence of forty years.  The Petitioner challenged the performance of trial counsel and the voluntariness of her guilty plea. Following an evidentiary hearing, the post-conviction court denied relief.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, attorney for appellant, Brandyce Lusby.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

The Petitioner was charged with first degree premeditated murder, first degree murder in the perpetration of a felony, attempted especially aggravated robbery, and tampering with evidence.  The Petitioner pled guilty to second degree murder and agreed to plead outside of her range as a Range II, multiple offender in order to have the first degree murder charge reduced to second degree murder.  Upon her acceptance of the plea agreement, the first degree murder in the perpetration of a felony charge was merged into her second degree

murder conviction. The Petitioner pled guilty to all of the other charges and received a sentence of twelve years for the attempted especially aggravated robbery conviction and a sentence of six years for the tampering with evidence conviction. These convictions were to be served concurrently with the second degree murder conviction. At the guilty plea submission hearing, the Petitioner did not indicate that she was unhappy with trial counsel or that she did not wish to plead guilty. On the contrary, she answered all of the trial court's questions and admitted her involvement in the victim's death. The Petitioner timely filed a petition for post-conviction relief in which she claimed that trial counsel was ineffective and that she did not voluntarily plead guilty.

The Petitioner testified at the evidentiary hearing that she did not voluntarily plead guilty because she was not "stable" and did not understand what was happening at the hearing. She also said that she was coerced into submitting a statement during her interrogation in which she admitted to killing the victim. The Petitioner signed four statements in relation to the victim's murder. In the fourth statement, taken on July 13, 2007 at 6:00 p.m., the Petitioner admitted that she killed the victim. According to the fourth statement, the victim was driving down the street when he was stopped by the Petitioner, who pointed a gun at him and asked him if he had "anything." The victim raised his hands, and her gun "went off" four times.

However, at the post-conviction hearing, the Petitioner testified that she was innocent. According to the Petitioner, when she gave her statement, she was fearful of a person whom she believed was responsible for killing the victim. She admitted that this person was not present at her interrogation; however, she insisted that she was pressured and coerced into giving her statement when the investigators told her what to write. She claimed that they told her that they knew she was innocent and that she "wasn't going to be locked up" as a result of the confession.

According to the Petitioner, trial counsel "didn't investigate anybody." Trial counsel only met with her twice, and the meetings were short. He never asked her what happened even though she told him that she was innocent. He also never asked her about her mental evaluations or investigated the issue of her competency. She admitted that she is not currently receiving any treatment or taking any medications. She knew of witnesses who could be called in her defense; however, she never asked trial counsel to interview these witnesses because he was not responsive to her suggestions. Trial counsel repeatedly reminded her about several witness statements that were harmful to her case. She told him that these witnesses were lying, but trial counsel did not listen. She told him that she was fearful for her life when she gave the statements.

The Petitioner claimed that trial counsel did not discuss the documents relating to her case, and he did not tell her when he received new information about her case. Her first lawyer provided her with a copy of her statements and the police reports, but she never discussed these documents with trial counsel. Trial counsel told her that if she went to trial that she would receive a sentence of life imprisonment and that "he was not going to work on [her] behalf." He also told her that he could not do anything for her. She said that she told trial counsel that she wanted to go to trial. In response, trial counsel told her that if she went to trial, she could receive a sentence of life imprisonment.

The Petitioner also alleged that trial counsel had a pre-existing relationship with the victim's cousin. According to the Petitioner, trial counsel told her that he had a conversation with the victim's cousin and that the victim's family was "taking it pretty hard."

On cross-examination, the Petitioner admitted that she was present at the preliminary hearing and that several witnesses were called to testify. These witnesses implicated her in the shooting. Relative to her confession, she insisted that she lied when giving all four statements. She admitted that she was present at the guilty plea submission hearing and that her answers to the trial court's questions indicated that she was voluntarily pleading guilty. She insisted that trial counsel pressured her into accepting the agreement and that she was "incompetent" at the time of the hearing. She admitted that she did not present any medical testimony at the guilty plea submission hearing to prove her incompetence. She said that she understood questions asked of her when she was allowed to "take [her] time." She was unable to understand trial counsel's questions of her because of the way he talked to her.

James Thompson, an Assistant District Attorney General for the Twenty-Sixth Judicial District, testified that he prosecuted the Petitioner and that he discussed her case with trial counsel. He believed that there was a substantial case against the Petitioner. There were several witnesses who were willing to testify against her, and she had provided damaging statements regarding her involvement. Her statements were taken voluntarily after she waived her Miranda rights. He recalled that she was evaluated and deemed competent to stand trial and that the "insanity defense was not supported by the evidence." The evaluation "touched upon the issue of diminished capacity" in that "if there was evidence that she had been intoxicated as she indicated," then trial counsel could have supported a theory of diminished capacity. However, "[t]he final conclusion was diminished capacity did not apply to the facts and the insanity defense was not supported by the facts."

General Thompson identified several motions that were filed by trial counsel on behalf of the Petitioner. He recalled that they did not have any hearings relative to the Petitioner's case because the Petitioner accepted the plea agreement.

On cross-examination, he stated that there was an eyewitness to the shooting who was willing to testify that he saw the Petitioner shoot the victim. This eyewitness was also willing to testify that the Petitioner admitted to shooting the victim in front of other people and that she attempted to destroy the murder weapon. He admitted that this eyewitness could have been a participant in the killing but stated that the Petitioner indicated in her statement that he was not involved in the decision to rob the victim. Additionally, "there was never any evidence from any witnesses that indicated he participated in the murder or the attempted robbery." There were also other witnesses who "witnessed the event but could not actually identify the [Petitioner] specifically, but did give general descriptions that matched her clothing that night."

He admitted that after the Petitioner underwent a forensic evaluation, she was then sent to Nashville for another evaluation. However, he said that this was common "for incarcerated murder suspects."

Following the evidentiary hearing, the court found that the Petitioner's testimony was "totally lacking in credibility" and that the guilty plea submission hearing indicated that the Petitioner understood the consequences of her decision to plead guilty. The Petitioner's assertion that trial counsel failed to interview witnesses was negated by the fact that these same witnesses were subpoenaed for the post-conviction hearing, but the subpoenas were not served. Therefore, this indicated that "trial counsel could not have found these witnesses anyway." The results of the mental evaluation also contradicted the Petitioner's assertion that she was incompetent. The trial court found that the Petitioner's assertion that she was unstable was also "totally lacking in credibility." While she contended that her confession was not voluntary, there were witnesses who were willing to testify that she admitted to killing the victim. The trial court found that "[t]he evidence that [the] [P]etitioner committed the th[e] crime [wa]s overwhelming" and denied her petition for post-conviction relief.

## ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegation to support her grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves her grounds by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to

whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner contends that trial counsel was ineffective for failing to adequately investigate her case and mental state at the time she confessed and for failing to properly prepare her case. The Petitioner also contends that she did not voluntarily plead guilty because of trial counsel's failure to adequately advise her of her right to proceed with a trial. The State responds that the Petitioner was found competent to stand trial and that the transcript of the guilty plea hearing reflects that she voluntarily pled guilty. The State also responds that the Petitioner met with her attorney and discussed her case, her confession, and the evidence against her.

Most of the Petitioner's claims related to trial counsel's alleged failure to investigate and present her case. The Petitioner and the State's attorney who participated in her case were the only witnesses who testified at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of h[er] defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We cannot speculate as to what an investigation may have revealed regarding her mental state or the evidence against her. See id. Accordingly, we conclude that the trial

court did not err in finding that the Petitioner failed to establish that trial counsel was ineffective for failing to investigate the Petitioner's case.

Relative to her contention that her guilty plea was involuntary, the Petitioner states that she was unstable at the time of the hearing and that trial counsel told her that he was not going to assist her in a trial because she was guilty and would be sentenced to life imprisonment if she went to trial. However, the trial court found that her testimony at the post-conviction hearing was not credible. The record also reflects that the petitioner voluntarily, knowingly, and intelligently agreed to a plea arrangement that would result in avoiding a conviction for first degree murder. Additionally, the Petitioner did not even assert or present evidence that trial counsel gave her any erroneous advice in relation to her decision to plead guilty. In fact, trial counsel's advice was correct because the Petitioner could have received a sentence of life imprisonment following her conviction of first degree felony murder. See Tenn. Code Ann. § 39-13-202(c). Following our review, we conclude that the post-conviction court did not err in finding that the Petitioner failed to establish that trial counsel was ineffective and that the Petitioner failed to establish that but for trial counsel's alleged deficiency she would have insisted on going to trial.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE